IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DANIEL J. DENNEHY,

Plaintiff

v.                                              CIVIL 04-1899 (JAG)

WALTER B. FRAMBES, et al.,

Defendants

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the court on motion to dismiss filed by the defendants Walter B. Frambes, Aline Frambes Buxeda, Jessica Frambes Buxeda and Janine Frambes Buxeda (hereinafter "defendants") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, for lack of subject matter jurisdiction and for failure to state a claim respectively.  (Docket No. 24, December 27, 2004.)  Plaintiff, Daniel J. Dennehy (hereinafter "Dennehy"), filed a memorandum of law in opposition to defendants' motion to dismiss on January 24, 2005.  (Docket No. 29.)  The matter was referred to me for a report and recommendation on March 9, 2005 (Docket No. 45), and now, having considered the arguments of the parties and the applicable law, it is my recommendation that defendants' motion to dismiss be DENIED.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

This is a diversity action filed by Dennehy in which he requests, among other things, a temporary restraining order, preliminary and permanent injunction.  He

CIVIL 04-1899(JAG)                    2

moves the court to order the defendants to refrain from acting as representatives in both law and fact of Vencedor Development Corporation in the case of <u>Vencedor Development Corp., et al v. Autoridad de Carreteras de Puerto Rico, et al.</u>, Civil No. D AC1977-0621, which is being litigated in the Commonwealth of Puerto Rico Court of First Instance, Bayamón Part.  Dennehy also appears to be seeking a declaration by the court of his entitlement to a little over 19% of the proceeds that the above described litigation might produce.  The following are the allegations made by Dennehy in support of the request for injunctive and declaratory relief.

Dennehy, a resident of 307 Bridge Brook, Wexfork, PA 15090, and citizen of the Commonwealth of Pennsylvania, maintains that on January 27, 2000, co-defendant Walter B. Frambes issued a letter addressed to Daniel J. Dennehy-Ward[1] which reads:

> This is to confirm that your compensation for assuming the position of vice President of Vencedor Corporation to supervise the pending litigation until its final resolution will be nineteen and one sixth percent (19 1/6%) from which payment of one half of the expenses incurred for the litigation will be paid.

(Docket No. 27, Attach. 2, at 7, Ex. 2.)  On May 19, 2000, Dennehy-Ward and Walter B. Frambes executed another document titled "Consent in Lieu of Meeting." Said document reads in pertinent part as follows:

> RESOLVED, that Mr. Daniel J. Dennehy[-Ward] be and is hereby ratified as Vice President of the Corporation with

---

[1] I will refer to the father as "Dennehy-Ward" and will use "Dennehy" when making reference to the son, who is the plaintiff in this case.

CIVIL 04-1899(JAG)                    3

> full authority to act for the corporation with respect to the pending litigation in return for receipt with preference over other obligations of the corporation of nineteen and one half percent of the total amount recovered in the pending litigation.

(Docket No. 27, Attach. 2, at 9, Ex. 4.)  However, on July 24, 2003, Walter B. Frambes issued a Corporate Resolution stripping Dennehy-Ward of his share in the proceeds to be recovered in the Vencedor Development litigation and of any and all powers conferred to Dennehy-Ward with respect to the corporation. (Docket No. 27, Attach. 3, at 5.)  According to said Corporate Resolution, all the powers given to Dennehy-Ward by virtue of the May 18, 2001[2] resolution were revoked.  (Id.) Walter B. Frambes made reference to some alleged irregularities and actions on the part of Dennehy-Ward which he claimed prejudiced the corporation and the litigation being conducted in the Bayamón court.  (Id.)  The resolution accused Dennehy-Ward, inter alia, of having made certain money transfers without informing Walter B. Frambes and of using the Corporation's bank account as his own personal account. (Id.)  Finally, the resolution effectively separated Dennehy-Ward of all the positions held and all the functions performed in relation to Vencedor Development Corporation.  (Id.)

---

[2]On May 18, 2001, Walter B. Frambes issued a resolution designating Dennehy-Ward as sole manger and administrator of the corporation's affairs with full power to represent the corporation as if he were the President, Chief Executive Officer and Treasurer of the corporation.  (Docket No. 27, Attach. 2, at 10, Ex. 5.)

CIVIL 04-1899(JAG)                        4

In February of 2004, Dennehy-Ward moved to Florida.  Such a fact is evidenced, according to Dennehy, by Dennehy-Ward's checking account statement for the months of May-June of 2004.  (Docket No. 27, Attach. 5.)  The statement lists Dennehy-Ward's address as 11 Lagos del Norte, Fort Pierce, Florida, 34951-2867.  (Id.)  Moreover, the statement shows almost daily ATM transactions within the state of Florida.  (Id.)

On July 1, 2004, Dennehy and Dennehy-Ward executed a document titled "Assignment and Acceptance Agreement."  In it, Dennehy-Ward assigned to his son Dennehy, "all of the right[s], title obligation and interest ... in any and all debt or obligation under contracts or agreements or by virtue of extra-contractual obligations owed to him and/or which [Dennehy-Ward] is the potential owner and/or ... has or may have a claim."  (Docket No. 27, Attach. 2, at 4, Ex. 1, ¶ 1.)  The agreement also gave Dennehy the right to bring any actions, administrative or judicial, in order to enforce the assigned rights and gave him the discretion to dispose of the same, or of the property acquired by virtue of the assigned rights.  (Id.)  Eventually, Dennehy-Ward moved to an assisted living community called "The Place at Vero Beach."  He died on October 13, 2004.  His death certificate states that at the time of death he was a resident of 3855 Indian River Boulevard, Vero Beach, Indian River, Florida, 32960.  (Docket No. 27, Attach. 6.)

The defendants now seek dismissal of Dennehy's complaint requesting injunctive and declaratory relief on the grounds that the court lacks subject matter

CIVIL 04-1899(JAG)                    5

jurisdiction.  Specifically, it is defendants' position that there is no complete diversity between the parties and that the amount-in-controversy requirement for diversity jurisdiction is not met in this case.  According to them, there is no complete diversity between Dennehy and the defendants because a service by publication made in a Puerto Rico newspaper as part of a separate state lawsuit indicated that the last known address of Dennehy-Ward was Parkville, Guaynabo, Puerto Rico.[3]  Furthermore, the defendants argue that even if diversity is found, Dennehy cannot meet the jurisdictional amount of $75,000.00 set forth in 28 U.S.C. § 1332.  In defendants' opinion, from either plaintiff's or defendants' point of view as to the value of the object of litigation, the jurisdictional amount is not met because the potential damage to Dennehy is speculative and unpredictable at best. The defendants submit that the value of the damages is speculative because there has been no judgment in the underlying litigation that is the object of the present case, and that even after the case goes to trial (the action was filed in 1977) and all the appeals are exhausted, there is no indication that the defendants will refuse to give Dennehy his share of the proceeds.  The defendants also argue that this court should not intervene because the controversy is not ripe for the issuance of declaratory relief and that the requirements for the issuance of a preliminary injunction cannot be met by Dennehy.

---

[3]The defendants contend that the real plaintiff in the case is Dennehy-Ward inasmuch as all the allegations in the complaint relate to him and not to his son and that Dennehy is trying to create diversity jurisdiction where none exists by using his Pennsylvania address instead of that of his father who is the real plaintiff.

CIVIL 04-1899(JAG)                          6

        Dennehy opposes defendants' motion claiming that he is the real party in interest in this case by virtue of the agreement entered into with his father Dennehy-Ward whereby the latter assigned his interest in the underlying litigation to the former.  Alternatively, Dennehy maintains that even if his father is deemed the real party in interest, the court still has jurisdiction since his father had become a domicile of the state of Florida.   Finally, Dennehy contends that the matter in controversy in this case exceeds the jurisdictional amount of $75,000 inasmuch as his interest in the Vencedor litigation could be worth more than $800,000.

## II.  STANDARD OF REVIEW

        Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a case if the court lacks jurisdiction over the subject matter.  Fed. R. Civ. P. 12(b)(1).  "Because federal courts are courts of limited jurisdiction, federal jurisdiction is never presumed."  Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998).  On the contrary, what the court must presume is that federal jurisdiction is lacking until otherwise established.  See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).   The burden is on the party asserting federal jurisdiction to demonstrate that such jurisdiction exists.  Aversa v. United States, 99 F.3d 1200, 1209 (1st Cir. 1996) (citing Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)).  The complaint must be construed liberally, treating the well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff.  Viqueira v.

CIVIL 04-1899(JAG)                    7

First Bank, 140 F.3d at 16 (citing Royal v. Leading Edge Prods., Inc., 833 F.2d 1, 1

(1st Cir. 1987)).

### III.  APPLICABLE LAW AND ANALYSIS

A.  Subject Matter Jurisdiction:  Diversity

The issue before the court is whether Dennehy has carried his burden of

showing that this court has jurisdiction over the subject matter of this action under

28 U.S.C. § 1332(a)(1).  Said subsection provides in relevant part that

> (a) The district courts shall have original jurisdiction of all
> civil actions where the matter in controversy exceeds the
> sum or value of $ 75,000, exclusive of interest and costs,
> and is between--
>     (1) Citizens of different States[4]

28 U.S.C. § 1332(a)(1).

As the statute makes clear, a federal district court has original jurisdiction in

all civil cases where the matter in controversy exceeds the sum of $75,000 and there

is diversity of citizenship.  Stewart v. Tupperware Corp., 356 F.3d 335, 337 (1st Cir.

2004).  It is up to the party asserting jurisdiction to show by a preponderance of the

evidence that both requirements were met at the time the compliant was filed.  See

García-Pérez v. Santaella, 364 F.3d 348, 350-51 (1st Cir. 2004) ("The key point of

inquiry is whether diversity of citizenship existed at the time the suit was filed[.]");

Coventry Sewage Assocs. v. Dworkin Realty Co., 71 F.3d 1, 4 (1st Cir. 1995)

(explaining that to determine if the amount-in-controversy requirement is met, the

---

[4]For purposes of this subsection, the word "States" includes the
Commonwealth of Puerto Rico.  28 U.S.C. § 1332(e).

CIVIL 04-1899(JAG)                    8

court must look at the circumstances as they existed at the time the complaint was filed).  I analyze both requirements separately keeping in mind that if the court finds plaintiff's showing wanting as to anyone of them, the complaint must be dismissed for lack of jurisdiction.

    1. Citizenship

    As stated, federal jurisdiction based on diversity requires a matter in controversy to be between citizens of different states.  Bank One, Tex., N.A. v. Montle, 964 F.2d 48, 49 (1st Cir. 1992).  For purposes of diversity, citizenship is usually equated with domicile.  Valentín v. Hosp. Bella Vista, 254 F.3d 358, 366 (1st Cir. 2001); Lundquist v. Precision Valley Aviation, Inc., 946 F.2d 8, 10 (1st Cir. 1991); Rodríguez-Díaz v. Sierra-Martínez, 853 F.2d 1027, 1029 (1st Cir. 1988).  "A persons' domicile[, in turn,] 'is the place where he [or she] has [a] true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning.'"  Rodríguez-Díaz v. Sierra-Martínez, 853 F.2d at 1029 (quoting 13B Charles Alan Wright et al., Federal Practice & Procedure § 3612, at 526 (1984)).  Domicile implicates physical or actual presence in a place with the intent to remain there indefinitely.  See Bank One, Tex., N.A. v. Montle, 964 F.2d at 53; see also Hawes v. Club Ecuestre El Comandante, 598 F.2d 698, 701 (1st Cir. 1979)).  Several factors are taken into account in analyzing a party's ties to a particular domicile.

> While it is impossible to catalogue all factors bearing on the issue, they include the place where civil and political rights

CIVIL 04-1899(JAG)                    9

> are exercised, taxes paid, real and personal property (such as furniture and automobiles) located, driver's and other licenses obtained, bank accounts maintained, location of club and church membership and places of business and employment.

Lundquist v. Precision Valley Aviation, Inc., 946 F.2d at 11-12; see also García-Pérez v. Santaella, 364 F.3d at 351.  No single factor is controlling and the analysis cannot focus on the number of contacts with the purported domicile but also on their substantive nature.  Id.

        I start this discussion by pointing out that the existence of diversity of citizenship can be challenged in two ways.  First, there could be a challenge where the defendant accepts plaintiff's version of the facts supporting jurisdiction as true but attacks their sufficiency ("sufficiency challenge").  Valentín v. Hospital Bella Vista, 254 F.3d at 363.  The second way to mount a jurisdictional challenge "is by controverting the accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the plaintiff and proffering materials of evidentiary quality in support of that position" (factual challenge).  Id.  When presented with a sufficiency challenge, the court must credit plaintiff's well-pleaded factual allegations and draw all reasonable inferences from said allegations in plaintiff's favor to dispose of the challenge.  Id. (citations omitted).  On the other hand, when resolving a factual challenge, "the plaintiff's jurisdictional averments are entitled to no presumptive weight [and] the court must address the merits of the jurisdictional claim by

CIVIL 04-1899(JAG)                    10

resolving the factual disputes between the parties." Id. (citing García v. Copenhaver, Bell & Assocs., 104 F.3d 1256, 1261 (11th Cir. 1997)).

In this case, the defendants appear to be mounting a factual challenge to Dennehy's jurisdictional averments. But their challenge is not the typical attack on the accuracy of the facts alleged by Dennehy in support of his claim of complete diversity. The defendants do not dispute that plaintiff Dennehy (as opposed to his father Dennehy-Ward) is a citizen of the Commonwealth of Pennsylvania. The defendants argue, however, that Dennehy is not "the real party in interest" in this action since the allegations in the complaint relate exclusively to his father Dennehy-Ward. Claiming that Dennehy-Ward was domiciled in Puerto Rico at the time this lawsuit was commenced,[5] the defendants maintain that the court lacks subject matter jurisdiction over this case for there is no complete diversity.

In opposition, Dennehy contends that the defendants are trying to destroy complete diversity in this case by unilaterally deeming Dennehy-Ward as the real party in interest. Dennehy maintains that his father Dennehy-Ward is neither the

_____

[5]The defendants attempt to support their claim that Dennehy-Ward was domiciled in Puerto Rico making reference to a certain Service by Publication published in El Vocero on October 23, 2004 where an address in Guaynabo, Puerto Rico was listed as the last known address of Dennehy-Ward. Despite defendants indication that such Service by Publication was included in their motion to dismiss as Exhibit 1, the same was not attached to the motion. In any event, such evidence by itself does not necessarily prove that Dennehy-Ward's did not acquire a new domicile.

CIVIL 04-1899(JAG)                     11

real party in interest in this case nor a resident[6] of Puerto Rico.  He submits that on

July 1, 2004, he and his father executed in Florida a document titled "Assignment

and Acceptance Agreement" in which Dennehy-Ward allegedly assigned to Dennehy,

among others, his interest in the <u>Vencedor</u> litigation.  Such document shows,

according to Dennehy, that it is he who is the real party in interest in this case.

Because there was complete diversity between him and all the defendants at the time

the complaint was filed, Dennehy maintains that defendants' motion to dismiss for

lack of subject matter jurisdiction should be denied.  In the alternative, it is

Dennehy's position that even if his father is deemed the real party in interest in this

case, that complete diversity still exists because his father was a citizen of the State

of Florida at the time the complaint was filed.

     After reviewing the arguments of the parties and the evidence in the record,

I find that the real party in interest in this case is Dennehy and not his father

Dennehy-Ward.  In the complaint, Dennehy identified himself as the plaintiff and

alleged to be "of legal age, resident of 307 Bridge Brook Wexfork, PA 15090, and

citizen of the Commonwealth of Pennsylvania."  (Docket No. 1.)   Contrary to

defendants' contention, he is the plaintiff with an interest in prosecuting this case

by virtue of the agreement entered into between him and his father.  In said

---

[6]Dennehy refers to the concept of residency as if it would be the equivalent of the concept of domicile.  Such reference is clearly incorrect since residency alone is insufficient to confer diversity jurisdiction.  <u>Valentín v. Hosp. Bella Vista</u>, 254 F.3d at 361 n.1.  ("Jurisdictionally speaking, residency and citizenship are not interchangeable.")  I assume that when he refers to residency, he means domicile for purposes of this discussion.

CIVIL 04-1899(JAG)                    12

document, titled "Assignment and Acceptance Agreement," Dennehy-Ward assigned

to his son Dennehy, "all of the rights, title obligation and interest … in any and all

debt or obligation under contracts or agreements or by virtue of extra-contractual

obligations owed to him and/or which [Dennehy-Ward] is the potential owner and/or

… has or may have a claim."  (Docket No. 27, Attach. 2, at 4, Ex. 1.)  Although the

allegations in the complaint relate to the rights originally acquired by Dennehy-Ward

to control the <u>Vencedor</u> litigation and to recover 19% of the award, said interest was

assigned to Dennehy in July 1, 2004.  Therefore, without entering into the validity

and legality of such assignment, it is clear that Dennehy is the real party with an

interest to regain control of the <u>Vencedor</u> litigation.

Having so concluded, it follows that there is no challenge to either the

sufficiency or accuracy to the allegation made by Dennehy that at the time he filed

the complaint he was a citizen of the Commonwealth of Pennsylvania. Consequently,

there is complete diversity between the parties.  As to this issue, defendants' motion

must be DENIED.

2. Jurisdictional Amount

The defendants argue that since the relief requested in this case is equitable

and declaratory in nature, that the potential monetary implications in this case are

speculative and unpredictable at best.  They also argue that Dennehy's contention

regarding the jurisdictional amount is simply an allegation of his entitlement to 19%

of the award recovered in the <u>Vencedor</u> litigation which he estimates to be worth

CIVIL 04-1899(JAG)                         13

over $1,000,000.  But according to the defendants, there is no real monetary interest in this case because there is no judgment in the underlying litigation and even after the case goes to trial and a final judgment obtained, there is no indication that the defendants will refuse to give Dennehy his share of the proceeds.  Therefore, it is defendants' position that it is a legal certainty that Dennehy's claim is for less than $75,000.

Dennehy ripostes that in accordance with a draft of an expert report prepared by Diego Chévere, CPA, CMC, CVA, the value to defendants of the Vencedor litigation was $4,515,943 by March 26, 2003.  Because Dennehy maintains that he is entitled to a little over 19% of whatever is recovered in said litigation, the value of his interest is estimated in approximately $880,608.97, an amount obviously exceeding the jurisdictional amount set forth in 28 U.S.C. § 1332(a).

As the party seeking to invoke the jurisdiction of the court, Dennehy also bears the burden of alleging with sufficient particularity the facts that would allow the court to determine that it is not a legal certainty that his claim is for less than $75,000.  Spielman v. Genzyme Corp., 251 F.3d 1, 5 (1st Cir. 2001); Dep't of Recreation & Sports v. World Boxing Ass'n, 942 F.2d 84, 88 (1st Cir. 1991).  "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."  Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977).  Generally, the value of the object of litigation is measured from plaintiff's perspective. See Ferris v. Gen.

CIVIL 04-1899(JAG)                    14

Dynamics Corp., 645 F. Supp. 1354, 1362 (D.R.I. 1986).  In other words, where the remedy sought is an injunction, "the 'amount in controversy' has historically been calculated by assessing the value to the plaintiffs of conducting their affairs free from the restriction or imposition which they seek to restrain." Id. (citations omitted).  Nevertheless, courts and commentators alike have recognized a clear trend to sanction jurisdiction where the amount in controversy requirement is satisfied from "either party" or "defendants'" viewpoint.  Grotzke v. Kurz, 887 F. Supp. 53, 55-56 (D.R.I. 1995) (citing 1 James W. Moore, et al., Moore's Federal Practice ¶ 0.9[1], at 820 (2d ed. 1995)).

          In this case, what Dennehy is seeking to restrain by requesting an injunction is defendants' control of the Vencedor litigation.  Dennehy bases his request in the need to regain control of said litigation in order to preserve his interest in the outcome, which in turn can be endangered by the choice of legal representation selected by the defendants and by any other mishandling of the litigation.  Assuming without deciding that Dennehy's claim is actionable and that he is entitled to the relief requested because the grounds asserted by him are legally and procedurally sound, it follows that he has carried his burden of showing that it is not a legal certainty that his claim is for less than the jurisdictional amount.  He submitted a draft of an expert report prepared by Diego Chévere, CPA, CMC, CVA, on March 26, 2003 in which the latter estimated the loss profits and damages resulting from the corporation's lack of use of land as allegedly prevented by the government of Puerto

CIVIL 04-1899(JAG)                    15

Rico.  (Docket No. 27, Attach. 8.)  In it, the expert calculated an estimated loss of

$2,121,218.86 with additional interest of $2,394,724.76 as of August 25, 1995.

Such damages are sought to be recovered in the Vencedor litigation.  Since Dennehy

claims to be entitled to 19% of any such damages recovered, his share of the

proceeds can certainly be estimated in over $800,000.  Thus, under either party's

viewpoint, it is not a legal certainty that the object of this litigation is less than the

jurisdictional amount.  See Giangrande v. Shearson Leahman/E.F. Hutton, 803 F.

Supp. 464, 466 (D. Mass. 1992) (noting that in attempting to establish the

jurisdictional amount, a plaintiff is entitled to rely on the actual or threatened

injury).  As to this issue, I recommend that defendant's motion to dismiss for lack

of subject matter jurisdiction be DENIED.

      B. Ripeness

      Next I address defendants' contention that since Dennehy's claim involves a

threat of future injury, the case is not ripe for the issuance of a declaratory

judgment as required by the Constitution "case and controversy" requirement of

Article III.  Specifically, the defendants argue that the alleged threatened injury is

not concrete or immediate.  According to the defendants, Dennehy seeks a

declaration by the court of his entitlement to 19% of zero.  This is so because no

judgment has been obtained, the case has not gone to trial, the lawsuit has taken

almost thirty years and even if it goes to trial and after all appeals are exhausted, the

defendants have yet to renege on Dennehy's 19% share.  In sum, it is defendants'

CIVIL 04-1899(JAG)                    16

contention that Dennehy's injury in this case is only hypothetical, speculative and conjectural.

Dennehy responds that the defendants incorrectly identify this case as a suit requesting declaratory relief. Thus, in Dennehy's opinion, it is irrelevant to discuss whether the present claim is ripe. More specifically, Dennehy maintains that the defendants already reneged his share and what he is seeking is a determination by the court which would force the defendants to relinquish their claim over his share. Since the claim for a share of the proceeds has an executory part, Dennehy argues that it is not a claim for declaratory relief, rather it is a claim springing from defendants' breach of contract with his father Dennehy-Ward.

It is well settled that Article III of the United States Constitution confines federal courts to the adjudication of "cases" and "controversies." Allen v. Wright, 468 U.S. 737, 750 (1984). Thus, federal courts can only decide what is referred to as "live grievance[s]." Am. Postal Workers Union v. Frank, 968 F.2d 1373, 1374 (1st Cir. 1992). Like the concept of standing, ripeness has its roots in Article III's case and controversy requirement and in prudential considerations. Mangual v. Rotger-Sabat, 317 F.3d 45, 59 (1st Cir. 2003) (citing R.I. Ass'n of Realtors, Inc. v. Whitehouse, 199 F.3d 26, 33 (1st Cir. 1999)). For a case to ripe for adjudication there has to be a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Lake Carriers' Ass'n v. MacMullan, 406 U.S. 498, 506

CIVIL 04-1899(JAG)                    17

(1972). "The ripeness doctrine seeks 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" McInnis-Misenor v. Me. Med. Ctr., 319 F.3d 63, 70 (1st Cir. 2003) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967)).

Determining ripeness involves a dual inquiry. McInnis-Misenor v. Me. Med. Ctr., 319 F.3d at 70. First, the court must determine whether the issue is fit for review. Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 535 (1st Cir. 1995). This determination involves subsidiary queries concerning finality, definiteness and the extent to which resolution of the challenge depends upon facts that may not yet be sufficiently developed. Id.; see also Stern v. United States Dist. Court, 214 F.3d 4, 10 (1st Cir. 2000). The critical question in the fitness analysis is "whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all." Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d at 536 (quoting Mass. Ass'n of Afro Am. Police, Inc. v. Boston Police Dep't, 973 F.2d 18, 20 (1st Cir. 1992)). The second prong of the test refers to the hardship the parties may suffer if the court withholds consideration of the controversy. This prong is entirely prudential. McInnis-Misenor v. Me. Med. Ctr., 319 F.3d at 70. The court must evaluate the extent to which withholding judgment will create a direct and immediate dilemma for the parties and whether plaintiff is suffering any present injury from a future contemplated event. Id. (citations omitted). "The greater the hardship, the more likely a court will be to find

CIVIL 04-1899(JAG)                    18

ripeness." Id. (citing Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d at 536).

Here, Dennehy attempts to avoid the ripeness analysis altogether by arguing that the relief requested in the complaint with respect to his 19% share was not declaratory in nature, but "spring[ing] from defendants['] breach of contract with Dennehy-Ward." (Docket No. 27, Attach. 1, at 33.)  However, the complaint specifically prays that the court "[r]ecognize Dennehy's 19 1/2% share in any proceeds that [the] Vencedor … [litigation] may produce." (Complaint, Docket No. 1, Attach. 1, at 6, ¶ 3.)  In effect, the relief requested is a declaration by the court of his entitlement to such share of the proceeds.  In that sense, he cannot avoid the ripeness analysis by characterizing his claim as one for breach of contract.

On the other hand, it does not appear that Dennehy's claim is not ripe for adjudication.  Without entering into the merits of whether the relief requested should be granted, it does not follow that the same is unfit for review.  The determination of Dennehy's entitlement to 19% of the Vencedor litigation award is not contingent on the outcome of said litigation or on any facts not yet developed. It is more aptly described as a purely legal question that may or may not be resolved in Dennehy's favor after analyzing the evidence already in the record and the evidence that may be produced at a trial on the merits if one becomes necessary. Additionally, withholding consideration of the controversy may result in the uncertainty of not having the parties' rights clearly delineated for which they would

CIVIL 04-1899(JAG)                    19

have to engage in further litigation once there is a judgment in the <u>Vencedor</u>

litigation.  Consequently, the claim is ripe for consideration although I express no

opinion on Dennehy's entitlement to the relief requested.  As to this issue,

defendants' motion to dismiss should also be DENIED.

## IV.  CONCLUSION

In view of the above, I recommend that defendants' motion to dismiss (Docket

No. 24) be DENIED.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any

party who objects to this report and recommendation must file a written objection

thereto with the Clerk of this Court within ten (10) days of the party's receipt of this

report and recommendation.  The written objections must specifically identify the

portion of the recommendation, or report to which objection is made and the basis

for such objections.  Failure to comply with this rule precludes further appellate

review. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985), <u>reh'g denied</u>, 474 U.S. 1111

(1986); <u>Davet v. Maccorone</u>, 973 F.2d 22, 30-31 (1st Cir. 1992); <u>Paterson-Leitch Co.</u>

<u>v. Mass. Mun. Wholesale Elec. Co.</u>, 840 F.2d 985 (1st Cir. 1988); <u>Borden v. Sec'y of</u>

<u>Health & Human Servs.</u>, 836 F.2d 4, 6 (1st Cir. 1987); <u>Scott v. Schweiker</u>, 702 F.2d

13, 14 (1st Cir. 1983); <u>United States v. Vega</u>, 678 F.2d 376, 378-79 (1st Cir. 1982);

<u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 12th day of May, 2005.

S/ JUSTO ARENAS
Chief United States Magistrate Judge