IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DANIEL J. DENNEHY,

      **Plaintiff(s)**

        **v.**

WALTER B. FRAMBES, <u>et al.</u>,

      **Defendant(s)**

**CIVIL NO.** 04-1899 (JAG)

### OPINION AND ORDER

GARCIA-GREGORY, D. J.

On August 30, 2004, plaintiff Daniel J. Dennehy-Kelly ("Dennehy-Kelly") filed suit against Walter B. Frambes, Alines Frambes-Buxeda, Jessica Frambes-Buxeda, and Janine Frambes-Buxeda (collectively "defendants") seeking a temporary restraining order, preliminary and permanent injunctive relief, as well as a declaration of his entitlement to a percentage of the proceeds an ongoing state court litigation may produce (Docket No. 1).[1]  The Court's jurisdiction is premised upon diversity of citizenship pursuant to 28 U.S.C. § 1332.  On December 27, 2004, defendants moved to dismiss Dennehy-Kelly's claims pursuant to Fed.R.Civ.P. 12(b)(1) for lack of jurisdiction and Fed.R.Civ.P. 12(b)(6) for failure to state a claim (Docket No. 24).  On January 12, 2005,

---

[1]The Court has already denied Dennehy-Kelly's request for a temporary restraining order and for a preliminary injunction (Docket Nos. 2, 61).

Civil No. 04-1899 (JAG)                                          2

Dennehy filed an opposition (Docket No. 27).  On March 9, 2005, the
Court referred the motion to dismiss to Magistrate-Judge Justo
Arenas for a Report and Recommendation (Docket No. 45).  On May 12,
2005, Magistrate-Judge Arenas recommended that the Court deny
defendants' motion (Docket No. 51).  On May 26, 2005, defendants
filed timely objections to the Report and Recommendation (Docket No.
56).  For the reasons discussed below, the Court **ADOPTS** the
Magistrate-Judge's Report and Recommendation and, accordingly,
**DENIES** defendants' motion to dismiss.

### FACTUAL BACKGROUND[2]

On January 27, 2000, defendant Walter Frambes issued a letter
addressed to Daniel J. Dennehy-Ward ("Dennehy-Ward")[3] stating that,
as compensation for assuming the position of vice-president of
Vencedor Development Corporation ("Vencedor") and supervising the
litigation against the Puerto Rico Highway Authority ("PRHA") until
its final resolution, Dennehy-Ward would receive nineteen and one
sixth percent ($19^{1/6}$ %) of the proceeds from the litigation.  On May
19, 2000, Dennehy-Ward and Walter Frambes executed another document
whereby Dennehy-Ward was ratified as vice-president of Vencedor
"with full authority to act for the corporation with respect to the

---

[2]The Court culls the relevant facts from the Magistrate-Judge's
Report and Recommendation.

[3]Dennehy-Ward is Dennehy-Kelly's father.  To avoid confusion,
the Court will refer to the plaintiff as "Dennehy-Kelly" and to his
father as "Dennehy-Ward".

Civil No. 04-1899 (JAG)                                                3

pending litigation in return for receipt with preference over other obligations of the corporation of nineteen and one half percent of the total amount recovered in the pending litigation." (Docket No. 20, Exh. 4).

On July 24, 2003, however, Walter Frambes issued a corporate resolution stripping Dennehy-Ward of his control over the PRHA litigation and of any and all powers conferred to him over the corporation. Walter Frambes made reference to some alleged irregularities and actions on the part of Dennehy-Ward which he claimed prejudiced Vencedor and the PRHA litigation. The resolution accused Dennehy-Ward, inter alia, of having made certain money transfers without informing Walter Frambes and of using Vencedor's bank account as his own personal account. Finally, the resolution effectively separated Dennehy-Ward from all the positions held and all the functions performed in relation to Vencedor.

In February 2004, Dennehy-Ward moved to Florida, as evidenced by his bank account statements. On July 1, 2004, Dennehy-Kelly and Dennehy-Ward executed a document titled "Assignment and Acceptance Agreement", whereby Dennehy-Ward assigned to his son "all of the right[s], title obligation and interest . . . in any and all debt or obligation under contracts or agreements or by virtue of extra-contractual obligations owed to him and/or which [Dennehy-Ward] is the potential owner and/or . . . has or may have a claim." (Docket No. 27, Exh. 1 at p. 2). The agreement also gave Dennehy-Kelly the

Civil No. 04-1899 (JAG)                                                    4

right to bring any actions, administrative or judicial, in order to
enforce the assigned rights and gave him the discretion to dispose
of the same, or of the property acquired by virtue of the assigned
rights.  Dennehy-Ward died on October 13, 2004.

**DISCUSSION**

A. <u>Motion to Dismiss Standard</u>

     Pursuant to Fed.R.Civ.P. Rule 12(b)(1), a defendant may move to
dismiss an action for lack of subject matter jurisdiction.  As
courts of limited jurisdiction, federal courts have the duty of
narrowly construing jurisdictional grants.  <u>See</u> <u>e.g.</u>, <u>Alicea-Rivera</u>
<u>v. SIMED</u>, 12 F.Supp.2d 243, 245 (D.P.R. 1998).  Since federal courts
have limited jurisdiction, the party asserting jurisdiction has the
burden of demonstrating the existence of federal jurisdiction.  <u>See</u>
<u>Murphy v. United States</u>, 45 F.3d 520, 522 (1st Cir. 1995); <u>Diaz</u>
<u>Serrano v. Caribbean Records Inc.</u>, 270 F.Supp.2d 217 (D.P.R. 2003).

     When deciding whether to dismiss a complaint for lack of
subject matter jurisdiction, the Court "may consider whatever
evidence has been submitted, such as . . . depositions and
exhibits."  <u>See</u> <u>Aversa v. United States</u>, 99 F.3d 1200, 1210 (1st
Cir. 1996).  When federal jurisdiction is premised on the diversity
statute, courts must determine whether complete diversity exists
among all plaintiffs and all defendants.  <u>Casas Office Machines v.</u>
<u>Mita Copystar America, Inc.</u>, 42 F.3d 668, 673 (1st Cir. 1994).

     Motions brought under Rule 12(b)(1) are subject to the same

Civil No. 04-1899 (JAG)                                                    5

standard of review for Rule 12(b)(6) motions.  <u>Negron-Gaztambide v.</u>
<u>Hernandez-Torres</u>, 35 F.3d 25, 27 (1st Cir. 1994); <u>Torres Maysonet v.</u>
<u>Drillex, S.E.</u>, 229 F.Supp.2d 105, 107 (D.P.R. 2002).  Under Rule 12
(b)(6), dismissal is proper "only if it clearly appears, according
to the facts alleged, that the plaintiff cannot recover on any
viable theory."  <u>Gonzalez-Morales v. Hernandez-Arencibia</u>, 221 F.3d
45, 48 (1st Cir. 2000)(<u>quoting</u> <u>Correa-Martinez v. Arrillaga-</u>
<u>Belendez</u>, 903 F.2d 49, 52 (1st Cir. 1990)).  Under Rule 12(b)(1)
dismissal would be proper if the facts alleged reveal a
jurisdictional defect not otherwise remediable.

B.   <u>Standard for Reviewing a Magistrate-Judge's Report and</u>
<u>Recommendation</u>

     A District Court may, on its own motion, refer a pending motion
to a U.S. Magistrate-Judge for a Report and Recommendation.  <u>See</u> 28
U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Local Civ. Rule 72(a).
Pursuant to Fed.R.Civ.P. 72(b) and Local Civ. Rule 72(d), the
adversely affected party may contest the Magistrate-Judge's Report
and Recommendation by filing written objections "[w]ithin ten days
of being served" with a copy of the order.  <u>See</u> 28 U.S.C. §
636(b)(1).  Since defendants have filed timely objections to the
Magistrate-Judge's Report and Recommendation, the Court shall make
a <u>de novo</u> determination of those portions of the report or specified
proposed findings or recommendations to which specific objection is
made.  <u>See</u> <u>United States v. Raddatz</u>, 447 U.S. 667, 673 (1980); <u>Lopez</u>
<u>v. Chater</u>, 8 F.Supp.2d 152, 154 (D.P.R. 1998).

Civil No. 04-1899 (JAG)                                                    6

C. <u>Defendants' Objections to the Report and Recommendation</u>

In their motion to dismiss, defendants raise three main arguments for dismissal of the complaint.  First, they argue that there is no complete diversity between the parties because Dennehy-Ward, the real party in interest according to defendants, was a resident of Puerto Rico at the time the complaint was filed. Second, as an alternative argument, defendants argue that plaintiff fails to meet the jurisdictional amount of seventy-five thousand dollars ($75,000) as required by 28 U.S.C. § 1332.  Finally, defendants argue that even if diversity jurisdiction exists, the complaint should be dismissed because plaintiff's claims are unripe for adjudication at this time.[4]  The Magistrate-Judge found that these arguments lack merit.

First, the Magistrate-Judge found that there is complete diversity because Dennehy-Kelly, who he found to be the real party in interest following the assignment, is, and was at the time of filing, a resident of the Commonwealth of Pennsylvania.  Second, that, if the Court ultimately finds that plaintiff is entitled to a share of the proceeds from the PRHA litigation, his share would amount to approximately eight-hundred thousand dollars ($800,000); well beyond the statutory minimum.  And third, that the controversy

_____

[4]Defendants' remaining arguments are properly directed towards plaintiff's request for preliminary injunctive relief, which the Court has already denied upon the Magistrate-Judge's recommendation (<u>See</u> Docket No. 61).

Civil No. 04-1899 (JAG)                                          7

is indeed ripe for adjudication since plaintiff's entitlement to a
share of the proceeds "is not contingent on the outcome of the
litigation or on any facts not yet developed." (Docket No. 51 at
18).  Defendants timely objected.

    1. <u>Diversity Of Citizenship</u>

    Defendants argue that no diversity exists because at the time
the complaint was filed Dennehy-Ward was a resident of Puerto Rico.
Their only evidence to that effect is a service by publication
notice published in a local newspaper after the filing of the
complaint, which states Dennehy-Ward's last known address as located
in Guaynabo, Puerto Rico.  Not only is it insufficient to establish
Dennehy-Ward's domicile for diversity purposes, but it actually
lends credence to plaintiff's contention.  If a plaintiff seeking to
sue Dennehy-Ward was forced to perform service by publication, it is
most likely because he could not serve Dennehy-Ward personally at
that address in Guaynabo, Puerto Rico.  Furthermore, the Magistrate-
Judge did find that, as evidenced by his bank account statements,
Dennehy-Ward had moved his residence to Florida before the complaint
was filed.

    Defendants further argue that Dennehy-Ward's assignment to
Dennehy-Kelly is invalid because Dennehy-Ward could only legally
transfer his cause of action for damages and not a personal right to
have control over the PRHA litigation, and because the assignment
was done collusively with the purpose of creating federal

Civil No. 04-1899 (JAG)                                              8

jurisdiction in contravention of 28 U.S.C. § 1359.  The argument
relating to the impropriety of the assignment, although it might
have some merit, is not properly before the Court because it was not
argued in the motion to dismiss and the Court refuses to entertain
on an objection any arguments not properly raised before the
Magistrate-Judge.  See Fonseca-Arroyo v. Puerto Rico Elec. Power
Authority, 367 F.Supp.2d 198, 200 (D.P.R. 2005)("The Court has
discretion in deciding whether or not to entertain arguments not
properly raised before the magistrate-judge").

     Moreover, the § 1359 argument is also easily dismissed.
Because the Magistrate-Judge found that Dennehy-Ward was a resident
of Florida at the time of filing and he was, thus, independently
diverse from the defendants, the Court is hard-pressed to find that
the assignment was collusive and with the purpose of creating
diversity jurisdiction.  Diversity of citizenship already existed
when Dennehy-Ward made the assignment.

     2. Amount In Controversy

     Defendants argue that because the state court has not yet
issued any judgment in the PRHA litigation, which in fact has not
even gone to trial, and because they have not reneged on his claims
over a share of the proceeds, plaintiff's claims are purely
speculative and unpredictable.  Thus, they argue, plaintiff cannot
establish that the amount he may recover as a result of this case
will surpass the seventy-five thousand dollar jurisdictional

Civil No. 04-1899 (JAG)                                                9

minimum.  The Magistrate-Judge found, however, that

> [a]ssuming without deciding that Dennehy[-KElly]'s claim
> is actionable and that he is entitled to the relief
> requested because the grounds asserted by him are legally
> and procedurally sound, it follows that he has carried his
> burden of showing that it is not a legal certainty that
> his claim is for less than the jurisdictional amount.

(Docket No. 51 at 14).  This conclusion is founded upon an expert

report which values the possible proceeds from the PRHA litigation

at over four-million dollars, making plaintiff's purported share a

little over eight-hundred thousand dollars.  The Court, upon de novo

review, finds no reason to depart from the Magistrate-Judge's

finding.

   3. Ripeness

   Defendants argue that this case is not ripe for adjudication

because the alleged injury to the plaintiff is contingent upon

future events which may or may not happen; mainly, that Vencedor

will prevail in the PRHA litigation as well as all appeals, that it

will receive a money award, and that defendants will refuse to give

the plaintiff his share of the proceeds.  Thus, there is currently

no case or controversy before the Court, as required by U.S. Const.

Art. III § 2.  Furthermore, they argue that the threat of future

injury is neither immediate nor imminent.

   The Court finds, however, that a controversy does presently

exist in this matter.  As the Magistrate-Judge correctly stated,

Dennehy-Kelly's entitlement to a share of the proceeds presents "a

purely legal question that may or may not be resolved in [his] favor

Civil No. 04-1899 (JAG)                                                    10

. . . ." (Docket No. 51 at 18).  Whether Dennehy-Kelly has a right to a participation in the litigation, whatever its outcome may be, is a question that can be considered by the Court since his entitlement does not depend on the outcome.  What will be affected by the outcome is simply the specific amount that plaintiff could be entitled to.  Therefore, there is a controversy which is ripe for judicial adjudication.

**CONCLUSION**

For the foregoing reasons, the Court **ADOPTS** the Magistrate-Judge's Report and Recommendation in its entirety.  Accordingly, the Court **DENIES** defendants' motion to dismiss.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of August 2005.

s/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge